1   JUSTIN M. GOLDSTEIN (SBN 198858)
    CARLSMITH BALL LLP
2   515 South Flower Street
    Suite 2900
3   Los Angeles, California  90071-2225
    Telephone:      213.955.1200
4   Facsimile:      213.623.0032
    jgoldstein@carlsmith.com
5
    Attorneys for Defendant
6   THE RICHARDS GROUP, INC.

7

8                   UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT

10                  SAN FRANCISCO DIVISION

11

12   SONY COMPUTER ENTERTAINMENT          CASE NO. C12-04753 CRB
     AMERICA LLC, a Delaware limited
13   liability company,                   **DEFENDANT THE RICHARDS GROUP
                                          INC.'S NOTICE OF MOTION AND
14                   Plaintiff,           MOTION TO DISMISS SONY
                                          COMPUTER ENTERTAINMENT
15   v.                                    AMERICA LLC'S FIRST AMENDED
                                          COMPLAINT**
16   BRIDGESTONE AMERICAS, INC., a
     Nevada corporation; THE RICHARDS     **FED. R. CIV. P. 12(b)(6)**
17   GROUP, INC., a Texas corporation; and
     DOES 1 through 10,                    **[[PROPOSED] ORDER FILED
18                                          CONCURRENTLY]**
                     Defendants.
19                                         Date:        June 21, 2013
                                           Time:        10:00 a.m.
20                                         Courtroom: 6
                                           Judge:       Hon. Charles R. Breyer
21

22

23

24

25

26

27

28

CARLSMITH BALL LLP    4848-2580-7123.1
 ATTORNEYS AT LAW
   LOS ANGELES         THE RICHARDS GROUP'S MOTION TO DISMISS - CASE NO. C12-04753 CRB

1  TO PLAINTIFF AND DEFENDANT BRIDGESTONE AMERICAS, INC. AND THEIR

2  ATTORNEYS:

3        PLEASE TAKE NOTICE that on June 21, 2013, at 10:00 a.m., or as soon thereafter as the

4  matter can be heard in the above-entitled Court, located at 450 Golden Gate Avenue

5  San Francisco, California 94102, defendant The Richards Group, Inc. ("TRG") will and hereby

6  does move the Court for an order dismissing the second claim for relief (Unfair Competition, Cal.

7  Bus. & Prof. Code §§ 17200, et seq.), the fifth claim for relief (Tortious Interference with

8  Contractual Relations), and the request for injunctive relief as to all causes of action in the First

9  Amended Complaint ("FAC") filed by plaintiff Sony Computer Entertainment America, LLC's

10  ("SCEA").  The grounds for TRG's Motion are:  (1) the allegations in support of SCEA's claim

11  for tortious interference with contractual relations are conclusory and fail to allege sufficient facts

12  as required by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S.

13  662 (2009); (2) SCEA's injunctive relief request (as to SCEA's first, second, third, fourth, fifth

14  claims for relief) does not seek to enjoin any ongoing activity, is deficiently pled, and is not

15  narrowly tailored to address only matters put at issue by the FAC; and (3) SCEA's claim violation

16  of California Business & Professional Code § 17200 has no authorized remedy available under

17  California Business & Professional Code § 17203.

18        TRG's motion will be based on this Notice of Motion and Motion, the attached

19  Memorandum of Points and Authorities, all reply papers filed in support of this Motion, any oral

20  argument that may be heard by this Court, and the pleadings and papers filed in this lawsuit.

21                              **ISSUES TO BE DECIDED**

22        1.      SCEA alleges that TRG knew about (and induced breach of) a contract involving

23  SCEA and an actor.  Is it enough to allege only those conclusions, or must SCEA allege adequate

24  facts to support those conclusions in order to avoid dismissal of its tortious interference with

25  contractual relations claim?

26        2.      Is SCEA's request for injunctive relief legally deficient for any one of three

27  reasons (each of which can independently provide a basis for dismissal):  (a) SCEA has not

28  alleged any ongoing activity violating its rights, nor has SCEA alleged there is likely to be future

CARLSMITH BALL LLP
ATTORNEYS AT LAW
LOS ANGELES

4848-2580-7123.1                                    1

activity that would violate its rights; (b) SCEA broadly asks the Court to effectively enjoin TRG to "obey the law"; and (c) the injunctive relief sought extends far beyond the matters put at issue in the FAC.

3.     The only available remedies for violation of California Business & Professions Code section 17200 are injunctive relief and restitution.  Because SCEA has made no request for restitution (and any such request would be legally deficient on its face, in any event), if the Court dismisses SCEA's injunctive relief request, should the Court also dismiss SCEA's claim for violation of California Business & Professions Code section 17200 as having no available remedy?

### SUMMARY OF ARGUMENTS

1.     The Court should dismiss SCEA's fifth claim for relief for tortious interference because SCEA's knowledge and intentional interference/inducement allegations in support of this claim are conclusory and fail to "allege enough facts to state a claim to relief that is plausible on its face" as required by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  *See*, *e.g.*, *Hoffman v. L & M Arts*, 774 F.Supp.2d 826, 846 (N.D. Tex. 2011).

2.     The Court should dismiss SCEA's request for injunctive relief as to all claims for the following reasons: (a) SCEA has not alleged (and cannot allege) any continuing conduct that should be enjoined (*United States v. Oregon State Med. Soc.*, 343 U.S. 326, 333 (1952)); (b) SCEA cannot ask the Court to effectively enjoin TRG to "obey the law" (*Mancha v. Immigration & Customs Enforcement*, 2007 WL 4287766, at *3 (N.D. Ga. Dec. 5, 2007); *Louis W. Epstein Family P'ship v. Kmart Corp.*, 13 F.3d 762, 771 (3d Cir. 1994)); (c) SCEA's requested injunctive relief extends far beyond the matters put at issue in the FAC (*Castro v. Kailin*, 2012 WL 209187, at *3 (C.D. Cal. Jan. 24, 2012)).

3.     The Court should dismiss SCEA's second claim for relief for violation of California Business & Professions Code § 17200 because SCEA has not alleged (and cannot allege) that it is entitled to any available remedy under the law.  The only remedies available for a Cal. Bus. & Prof. Code § 17200 violation are injunctive relief and restitution.  SCEA's injunctive

1  relief request should be dismissed for the reasons enumerated above.  And here, there is no

2  monetary relief requested that could conceivably be considered restitution (which involves either

3  getting money or property back that was taken from plaintiff, or obtaining money or property in

4  which plaintiff as a vested interest).  *See Watson Laboratories, Inc. v. Rhone–Poulenc Rorer, Inc.*,

5  178 F.Supp.2d 1099, 1121-1122 (C.D. Cal. 2001).  SCEA may not disguise a damages claim as a

6  claim for restitution.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1152 (2003).

7  Dated: May 7, 2013                                      Respectfully submitted,

8                                                          CARLSMITH BALL LLP

9

10                                                         By: /s/ Justin M. Goldstein

11                                                         Justin M. Goldstein
                                                           Attorneys for Defendant
12                                                         THE RICHARDS GROUP, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   OVERVIEW OF RELEVANT FACTS ............................................................. 2

III.  ARGUMENT ....................................................................................................... 3

      A.    Applicable Pleading Standards ............................................................... 3

      B.    SCEA's Claim For Tortious Interference With Contractual Relations
            Should Be Dismissed As To TRG ......................................................... 4

      C.    SCEA's Request For Injunctive Relief Against TRG Should Be Dismissed
            As To All Claims ................................................................................... 7

      D.    SCEA's Claim For California Business & Professions Code Section 17200
            Should Be Dismissed As To TRG ....................................................... 10

IV.   CONCLUSION ................................................................................................... 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,
  790 F.Supp.2d 1024 (N.D. Cal. 2011) ................................................... 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................... 3, 6, 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................ 3, 4, 9

*Brady v. United of Omaha Life Ins. Co.*,
  2012 WL 3583033 (N.D. Cal. Aug. 20, 2012) ................................... 8, 9

*Brandner v. Abbott Laboratories, Inc.*,
  2012 WL 27696 (E.D. La. Jan. 5, 2012) ............................................... 8

*Castro v. Kailin*,
  2012 WL 209187 (C.D. Cal. Jan. 24, 2012) ...................................... 8, 9

*E.E.O.C. v. Global Horizons, Inc.*,
  860 F.Supp.2d 1172 (D. Haw. 2012) .................................................. 4

*East v. City of Richmond*,
  2010 WL 4580112 (N.D. Cal. Nov. 3, 2010) ....................................... 4

*Fountain v. Lebron*,
  2011 WL 6749798 (E.D. Cal. Dec. 22, 2011) ...................................... 4

*Hoffman v. L & M Arts*,
  774 F.Supp.2d 826 (N.D. Tex. 2011) ............................................... 5, 6

*Horizon AG-Products v. Precision Systems Engineering, Inc.*,
  2010 WL 4054131 (D. N.M. Sept. 28, 2010) ...................................... 6

*Howard Opera House Associates v. Urban Outfitters, Inc.*,
  322 F.3d 125 (2d Cir. 2003) ............................................................ 9

*In re Toyota Motor Corp.*,
  754 F.Supp.2d 1145 (C.D. Cal. 2010) ............................................... 4

*Kennedy v. Gonzalez*,
  2011 WL 6130857 (E.D. Cal. Dec. 8, 2011) ....................................... 4

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal.4th 1134 (2003) ................................................................ 10

*Louis W. Epstein Family P'ship v. Kmart Corp.*,
  13 F.3d 762 (3d Cir. 1994) .............................................................. 9

*Mancha v. Immigration & Customs Enforcement*,
  2007 WL 4287766 (N.D. Ga. Dec. 5, 2007) ...................................... 8, 9

*McCoy v. Stonebridge Life Ins. Co.*,
  2012 WL 4498819 (E.D. Tenn. Sept. 28, 2012) .................................... 3

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ........................................................... 3

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
  50 Cal.3d 1118 (1990) ................................................................... 4

1

## <u>TABLE OF AUTHORITIES</u>
### (continued)

2

<u>Page</u>

3

*Rose v. City of Los Angeles*,
   814 F. Supp. 878 (C.D. Cal. 1993) ........................................................................ 8

4

*Schmidt v. Lessard*,
   414 U.S. 473 (1974) .............................................................................................. 8

5

6

*United States v. Oregon State Med. Soc.*,
   343 U.S. 326 (1952) .............................................................................................. 7

7

*Watson Laboratories, Inc. v. Rhone–Poulenc Rorer, Inc.*,
   178 F.Supp.2d 1099 (C.D. Cal. 2001) ................................................................ 10

8

*Whittlestone, Inc. v. Handi-Craft, Co.*,
   618 F.3d 970 (9th Cir. 2010) ................................................................................ 4

9

*Wright v. Gen. Mills, Inc.*,
   2009 WL 3247148 (S.D. Cal. Sept. 30, 2009) ..................................................... 9

10

*Yagman v. Galipo*,
   2013 WL 1287409 (C.D. Cal. Mar. 25, 2013) ..................................................... 6

11

### STATUTES

12

California Business & Professions Code section 17200 ........................................... 10, 11

13

California Business & Professions Code section 17203 ................................................. 10

14

Federal Rule of Civil Procedure 12(b)(6) ............................................................ 3, 4, 8

15

Federal Rule of Civil Procedure 65 .................................................................................. 8

16

17

18

19

20

21

22

23

24

25

26

27

28

1    <center>**MEMORANDUM OF POINTS AND AUTHORITIES**</center>

2    **I.**     <u>**INTRODUCTION**</u>

3         Plaintiff Sony Computer Entertainment America, LLC ("SCEA") brings this suit because

4    an actor that appeared in commercials for its Playstation game system also appeared in a

5    commercial for Bridgestone tires.  The Bridgestone commercial had a cross-promotion with the

6    Nintendo Wii game system, and according to SCEA, the actor's participation in that commercial

7    breached a contract that SCEA had with the actor's loan-out company (the entity that contracts to

8    provide the actor's services).  SCEA contends that defendant The Richards Group, Inc. ("TRG"),

9    which produced the commercial, knew about the contract in advance and induced the actor's

10   loan-out company to breach it.  The problem for SCEA is that it can allege nothing more than

11   mere conclusions that TRG knew about the contract and induced the breach.  Despite six months

12   having passed since it filed the original complaint, SCEA alleges no facts whatsoever in the First

13   Amended Complaint ("FAC") to suggest that those conclusions are plausible (and, in fact, they

14   are not).  Vague and conclusory allegations like those found in the FAC are no longer permitted

15   in federal court, and as a result, the Court should dismiss plaintiff's tortious interference with

16   contractual relations claim.

17        SCEA also asks the Court to broadly enjoin TRG from engaging in Lanham Act

18   violations, misappropriation and unfair competition.  In other words, SCEA asks the Court to

19   enjoin TRG to "obey the law."  Such impermissibly indeterminate injunction requests are

20   routinely (and appropriately) dismissed at the pleading stage.  What is more, SCEA cannot

21   identify in the FAC any ongoing activity that it is seeking to enjoin.  A request for injunctive

22   relief targeting only prior alleged misconduct is not proper, and should be dismissed.

23        Without injunctive relief available to SCEA, the Court should also dismiss the unfair

24   competition claim asserted under California Business & Professions Code section 17200.  The

25   only other available remedy for that claim is restitution, and SCEA has not alleged (and cannot

26   allege) any basis for a restitutionary recovery.

27        TRG vigorously disputes all of the claims advanced by SCEA, and is prepared to litigate

28   each of them through disposition on the merits.  In order to avoid needless expense to the parties

CARLSMITH BALL LLP
ATTORNEYS AT LAW
LOS ANGELES

4848-2580-7123.1

<center>1</center>

1   and drain on judicial resources, however, TRG respectfully requests that this Court dismiss those

2   claims that are legally deficient on the pleadings.  The parties and the Court can then rightly

3   concentrate their efforts on the remaining elements of the FAC.

4   **II.**    **OVERVIEW OF RELEVANT FACTS**

5         As alleged in the FAC, TRG is an advertising agency that produced a series of

6   commercials for its client, defendant Bridgestone Americas, Inc. ("Bridgestone"), including one

7   commercial involving a co-promotion with Bridgestone tires and a Nintendo Wii game system

8   (the "Game On!" commercial).  (FAC ¶ 3.)  Among the actors appearing in those commercials

9   (including the Game On! commercial) was an actor (Jerry Lambert) whose services were

10   provided by a loan-out entity called Wildcat Creek.  (FAC ¶ 3.)

11         SCEA alleges that it had an agreement with Wildcat Creek concerning the acting services

12   of Lambert, who played a character in commercials for SCEA's Playstation game system.  (FAC

13   ¶¶ 16, 20)  According to SCEA, its agreement with Wildcat Creek prohibited Lambert from

14   providing his services or his likeness in connection with advertising, promotion or sale of an

15   electronic game or gaming system or any product related to electronic games or gaming systems

16   manufactured or distributed by certain companies, including Nintendo.  (FAC ¶ 17.)

17         SCEA goes on to allege that shortly after its agreement with Wildcat Creek expired, the

18   Game On! commercial began airing.  (FAC ¶ 23.)  Recognizing that those broadcasts alone could

19   not constitute a breach by Wildcat Creek (since the agreement had expired by then), SCEA

20   alleges that the commercial must have been produced while the SCEA/Wildcat Creek agreement

21   was still operative.  (FAC ¶ 25.)  It is presumably SCEA's theory that Wildcat Creek breached the

22   agreement by permitting Lambert to participate in the production of the commercial.

23         But SCEA is no longer asserting any claims against Wildcat Creek (or Lambert) relating

24   to that alleged contractual breach.  Neither Wildcat Creek nor Lambert are named as defendants

25   in the FAC.  SCEA now claims that TRG (along with Bridgestone) are responsible for tortiously

26   interfering with its contractual relationship by inducing Wildcat Creek to breach the SCEA/

27   Wildcat Creek agreement.  In support of this claim, SCEA alleges that:  (1)  "On information and

28   belief, Bridgestone and TRG were aware of the existence of the [SCEA/Wildcat Creek]

1    Agreement, including the exclusivity provision in which Wildcat Creek agreed not to provide

2    services for any products in competition with PlayStation products"; and (2) "On information and

3    belief, Bridgestone and TRG knew that interference with the [SCEA/Wildcat Creek] Agreement

4    would occur when the actor provided services to promote the Nintendo Wii in the Co-

5    Promotion."  (FAC ¶ 26.)  SCEA then repeats these conclusory contentions in its tortious

6    interference claim by alleging that "Defendants had knowledge of [the SCEA/Wildcat Creek]

7    contractual relationship and the exclusive nature of it," and that "Defendants intentionally

8    interfered with SCEA's contractual relationship through the unlawful conduct alleged herein."

9    FAC ¶¶ 63-64.)

10       As part of its tortious interference claim, SCEA contends that it is "entitled to injunctive

11   relief preventing any further tortious interference of its contractual relationship."  (FAC ¶ 68.)

12   Indeed, SCEA seeks the same sort of injunctive relief as to several of its claims.  In its Prayer for

13   Relief, SCEA asks that the Court impose an injunction restraining Defendants from:  "a. violating

14   SCEA's rights under the Lanham Act," "b. engaging in any unfair competition," "c. engaging in

15   any misappropriation of SCEA's property," and "d. engaging in any tortious interference with

16   SCEA's contractual relations."  (FAC, Prayer For Relief ¶ 2.)

17   **III.    ARGUMENT**

18       **A.    Applicable Pleading Standards.**

19       A court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) where "there

20   is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable

21   legal theory."  *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001).  There can be no dispute that

22   the Complaint "must contain . . . factual allegations with respect to all material elements of the

23   claim[s]" asserted by SCEA.  *McCoy v. Stonebridge Life Ins. Co.*, 2012 WL 4498819, at *2 (E.D.

24   Tenn. Sept. 28, 2012).  To survive a motion to dismiss, plaintiff must allege "enough facts to state

25   a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

26   (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

27   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

28   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).   Litigants are

1    expected to allege "more than labels and conclusions, and a formulaic recitation of the elements

2    of a cause of action will not do." *Twombly*, 550 U.S. at 555.  The allegations must "give the

3    defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.*

4         In addition to being the appropriate vehicle for challenging an entire claim, the Ninth

5    Circuit also recently established that a motion to dismiss pursuant to Federal Rule of Civil

6    Procedure 12(b)(6) is the appropriate mechanism for challenging an impermissible request for

7    relief.  *Whittlestone, Inc. v. Handi-Craft, Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010) ("Rule 12(f)

8    does not authorize district courts to strike claims for damages on the ground that such claims are

9    precluded as a matter of law."); *see also In re Toyota Motor Corp.*, 754 F.Supp.2d 1145, 1169

10   (C.D. Cal. 2010) ("Where a party moves to strike a prayer for damages on the basis that the

11   damages sought are precluded as a matter of law, the request is more appropriately examined as a

12   motion to dismiss.").  The Ninth Circuit's reasoning and approach applies both to requests for

13   injunctive relief and to requests for damages.  *Kennedy v. Gonzalez*, 2011 WL 6130857, at *1

14   (E.D. Cal. Dec. 8, 2011); *In re Toyota Motor Corp.*, 754 F.Supp.2d at 1195; *see also Fountain v.*

15   *Lebron*, 2011 WL 6749798, at *2 n.3 (E.D. Cal. Dec. 22, 2011); *East v. City of Richmond*, 2010

16   WL 4580112, at *6 n.3 (N.D. Cal. Nov. 3, 2010); *E.E.O.C. v. Global Horizons, Inc.*, 860

17   F.Supp.2d 1172, 1181 (D. Haw. 2012).

18        **B.      SCEA's Claim For Tortious Interference With Contractual Relations Should**

19                **Be Dismissed As To TRG.**

20        Under California law, '[t]he elements which a plaintiff must plead to state the cause of

21   action for intentional interference with contractual relations are (1) a valid contract between

22   plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional

23   acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or

24   disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v.*

25   *Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990) (citations omitted).  Of course, it is not

26   sufficient to simply "plead the elements."  *Twombly*, 550 U.S. at 555.  SCEA must allege "<u>facts</u>

27   to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (emphasis

28   added).  SCEA plainly failed to meet this standard here.

CARLSMITH BALL LLP
ATTORNEYS AT LAW
LOS ANGELES

4848-2580-7123.1                                          4

1    While SCEA spends considerable time in the FAC identifying and describing its contract

2 with Wildcat Creek, it does not allege sufficient <u>facts</u> about TRG or Bridgestone's supposed

3 knowledge of that contract, nor does it allege sufficient <u>facts</u> about acts by TRG or Bridgestone

4 undertaken with the intent to interfere with the SCEA/Wildcat Creek contract or to induce

5 Wildcat Creek to breach the contract.  Indeed, this is not an instance where the factual allegations

6 are merely insufficient.  Here, there are no facts alleged <u>at all</u>.  SCEA alleges only the threadbare

7 knowledge and intentional interference/inducement elements—specifically that:  (1) "On

8 information and belief, Bridgestone and TRG were aware of the existence of the [SCEA/Wildcat

9 Creek] Agreement, including the exclusivity provision in which Wildcat Creek agreed not to

10 provide services for any products in competition with Playstation products"; and (2) "On

11 information and belief, Bridgestone and TRG knew that interference with the [SCEA/Wildcat

12 Creek] Agreement would occur when the actor provided services to promote the Nintendo Wii in

13 the Co-Promotion."  (FAC ¶ 26.)[1]  SCEA does not allege that it informed Bridgestone or TRG

14 about the exclusivity agreement prior to the production of the Game On! commercial, nor does

15 SCEA allege that Wildcat Creek or its representatives did so.  There are no factual allegations

16 whatsoever—much less allegations that would satisfy the "plausibility" standard—regarding

17 TRG's supposed knowledge and intent to interfere/induce a breach.

18    Federal courts have been clear that a plaintiff must include more than conclusory

19 allegations regarding knowledge and intentional interference/inducement in order to adequately

20 plead a tortious interference claim like the one advanced here by SCEA.  *See, e.g.*, *Hoffman v. L*

21 *& M Arts*, 774 F.Supp.2d 826, 846 (N.D. Tex. 2011).  In *Hoffman*, plaintiff asserted a tortious

22 interference with contract claim against Sotheby's for allegedly inducing another party to breach

23 its agreement with plaintiff concerning the sale of artwork.  774 F.Supp.2d at 831.[2]  Like SCEA,

24

25 ---

[1] SCEA does no better in its tortious interference claim section by only alleging that "Defendants

26 had knowledge of [the SCEA/Wildcat Creek] contractual relationship and the exclusive nature of it," and that "Defendants intentionally interfered with SCEA's contractual relationship through the unlawful conduct alleged herein."  (FAC ¶¶ 63-64.)  Once again, SCEA alleges <u>no facts</u>.

27 [2] The elements of the tortious interference with contract claim at issue in *Hoffman* are the same as the elements of SCEA's tortious interference with contractual relations claim here.  *See id.* at 845

28 n.14.

1    plaintiff there conclusorily alleged that Sotheby's, "[w]ith knowledge of the contract . . .

2    intentionally and willfully interfered, and continue[s] to interfere, with the contract without

3    justification, and [its] interference induce[d] and continues to induce Defendant Martinez's

4    breach of the Contract." *Id.* at 846.  The court found those allegations to be deficient, and on that

5    basis dismissed the tortious interference claim on the pleadings.  *Id*. at 848.  The court concluded

6    that plaintiff's "allegations about the knowledge of the Letter Agreement and intent of Sotheby's

7    . . . are conclusory and are insufficient to state a plausible claim for tortious interference with

8    contract." *Id.* at 846.  The court went on to underscore that "[i]t is not enough to allege that a

9    defendant had 'knowledge' of a contract or 'intentionally' interfered because this is nothing more

10   than a recital of some of the required elements for a claim of tortious interference with contract."

11   *Id.*[3]  Recognizing the current pleading standards established by the Supreme Court, the court

12   noted that "[A] complaint [does not] suffice if it tenders naked assertion[s] devoid of further

13   factual enhancement." *Id.* (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted).

14          SCEA's allegations are no different here.  The result should also be no different.  Both in

15   the general allegations section and as part of the tortious interference claim, SCEA merely pled

16   the elements of knowledge and inducement.  (FAC ¶¶ 26, 63-64.)  The case law is clear that

17   dismissal is warranted under such circumstances.  *See Hoffman*, 774 F.Supp.2d at 846; *Yagman*,

18   2013 WL 1287409, at *5; *Horizon AG-Products*, 2010 WL 4054131, at *11.  Indeed, this Court,

19   specifically, has recognized that allegations constituting "little more than a conclusory

20   restatement of the elements of a tortious interference claim" are insufficient, and mandate

21   dismissal on the pleadings.  *See Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790

22   F.Supp.2d 1024, 1032 (N.D. Cal. 2011) (this Court held that plaintiff's conclusory allegations

23

_____

[3] *See also Yagman v. Galipo*, 2013 WL 1287409, at *5 (C.D. Cal. Mar. 25, 2013) (granting
24   motion to dismiss tortious interference claims because plaintiff's conclusory allegations of intent
were "threadbare recitations of nothing more than the elements of each claim," and failed to
25   "allege plausible facts indicating that [defendant's] actions were intentionally designed to cause
[the] breach."); *Horizon AG-Products v. Precision Systems Engineering, Inc.*, 2010 WL 4054131,
26   at *11 (D. N.M. Sept. 28, 2010) (dismissed claim for tortious interference because plaintiff's
allegations that defendant "was aware or should have been aware" of agreements was conclusory
27   and lacked "facts regarding the basis of [defendant's] knowledge; for example, [plaintiff] does
not allege that it informed defendant of its existing contracts.")

28

1  regarding actual disruption were conclusory and lacked sufficient facts to maintain a claim for

2  tortious interference with prospective economic advantage).

3       Notably, this is not just a ministerial matter.  TRG submits that it would not be possible

4  for SCEA to allege in good faith any facts tending to demonstrate TRG had prior knowledge of

5  any contractual obligation limiting Wildcat Creek's ability to furnish the services Lambert

6  provided in connection with the production of the Game On! commercial, nor can SCEA allege in

7  good faith any facts tending to demonstrate that TRG acted with the intent to interfere with the

8  SCEA/ Wildcat Creek agreement or induce a breach or it.  It is simply not the case, and without

9  such factual allegations, the Court should not allow this claim to proceed forward against TRG

10  (or against Bridgestone, even though this Motion is brought only on behalf of TRG).

11      **C.**      **SCEA's Request For Injunctive Relief Against TRG Should Be Dismissed As**

12            **To All Claims.**

13       SCEA seeks from this Court an injunction broadly restraining Defendants from:  "a.

14  violating SCEA's rights under the Lanham Act," "b. engaging in any unfair competition," "c.

15  engaging in any misappropriation of SCEA's property," and "d. engaging in any tortious

16  interference with SCEA's contractual relations."  (FAC, Prayer For Relief ¶ 2.)  There are three

17  reasons, each of which is independently sufficient, that the Court should dismiss this injunctive

18  relief claim in its entirety at the pleading stage.

19       <u>First</u>, SCEA has not alleged (and cannot allege) any continuing conduct that should be

20  enjoined.  "The sole function of an action for injunction is to forestall future violations."  *United*

21  *States v. Oregon State Med. Soc.*, 343 U.S. 326, 333 (1952).  SCEA alleges what it claims to be

22  past violations of its rights based on the Game On! commercial, but nowhere in the FAC is there

23  any allegation that the Game On! commercial is still being broadcast, nor are there any

24  allegations that TRG is continuing to use or intends to use Lambert in the future in commercials

25  for Bridgestone (or any other client) in violation of any of SCEA's rights.  In fact, SCEA is

26  explicit in the FAC that the Game-On! commercial was still airing "at the time of filing the

27  original Complaint" (on September 11, 2012), but cannot make the same allegation as to the time

28  of the filing of the FAC.  Indeed, any such allegations would be flatly untrue.  Absent allegations

1  of continuing violations by TRG or a likelihood that violations will occur in the future, the Court

2  should dismiss SCEA's injunctive relief in its entirety on the pleadings.  *See Rose v. City of Los*

3  *Angeles*, 814 F. Supp. 878, 885 (C.D. Cal. 1993) (dismissing plaintiff's injunctive relief claim on

4  a 12(b)(6) motion because plaintiff failed to allege a credible threat of future injury to plaintiff.).

5          Second, the injunctive relief claim is deficiently pled.  It is axiomatic that under Federal

6  Rule of Civil Procedure 65, "an injunction must be narrowly tailored to remedy the specific

7  action necessitating the injunction."  *Castro v. Kailin*, 2012 WL 209187, at *3 (C.D. Cal. Jan. 24,

8  2012) (internal citations omitted).  There is good reason for this.  "Since an injunctive order

9  prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined

10 receive explicit notice of precisely what conduct is outlawed."  *Schmidt v. Lessard*, 414 U.S. 473,

11 476 (1974); *see also Brady v. United of Omaha Life Ins. Co.*, 2012 WL 3583033, at *8 (N.D. Cal.

12 Aug. 20, 2012).  Accordingly, where "the injunction sought is of such an indeterminate character

13 that an enjoined party cannot readily determine what conduct is being prohibited," it should be

14 denied.  *Brady*, 2012 WL 3583033, at *8.

15         SCEA gets no refuge from expectations of specificity by arguing that this matter is only at

16 the pleading stage.  While a complaint "is not required to 'proffer a prayer for injunctive relief

17 satisfying Rule 65(d)'s exacting precision,' [it] nonetheless must still 'describe the desired

18 equitable relief in sufficient detail for the court to determine whether . . . relief is potentially

19 appropriate and manageable.'"  *Castro*, 2012 WL 209187, at *3; *see also Brady*, 2012 WL

20 3583033, at *8 (denying injunctive relief <u>at the pleading stage</u>, noting that "[c]ourts have declined

21 injunctive relief where the injunction sought is of such an indeterminate character that an

22 enjoined party cannot readily determine what conduct is being prohibited"); *Mancha v.*

23 *Immigration & Customs Enforcement*, 2007 WL 4287766, at *3 (N.D. Ga. Dec. 5, 2007)

24 (granting motion to dismiss "obey the law"-type injunctive relief request as impermissibly

25 vague); *Brandner v. Abbott Laboratories, Inc.*, 2012 WL 27696, at *4–5 (E.D. La. Jan. 5, 2012)

26 (granting judgment on the pleadings where request for injunctive relief was impermissibly

27 vague).  As with the rest of SCEA's claims, its request for injunctive relief is subject to the

28

1   current federal pleading standards set by the Supreme Court in *Twombly* and *Iqbal*. *See, e.g.*,

2   *Wright v. Gen. Mills, Inc.*, 2009 WL 3247148, at *5 (S.D. Cal. Sept. 30, 2009).

3       Here, SCEA comes nowhere near satisfying its pleading requirements. SCEA seeks from

4   this Court an injunction broadly restraining Defendants from: "a. violating SCEA's rights under

5   the Lanham Act," "b. engaging in any unfair competition," "c. engaging in any misappropriation

6   of SCEA's property," and "d. engaging in any tortious interference with SCEA's contractual

7   relations." (FAC, Prayer For Relief ¶ 2.) This kind of "obey the law" injunction is highly

8   disfavored, and with good reason. "Broad, non-specific language that merely enjoins a party to

9   obey the law or comply with an agreement . . . does not give the restrained party fair notice of

10  what conduct will risk contempt." *Louis W. Epstein Family P'ship v. Kmart Corp.*, 13 F.3d 762,

11  771 (3d Cir. 1994); *see also Mancha*, 2007 WL 4287766, at *3 ("A vague and open-ended

12  injunction might pose an unnecessary burden on the Defendants who would face an additional

13  threat of contempt sanctions for violating a law that they were already supposed to follow.");

14  *Howard Opera House Associates v. Urban Outfitters, Inc.*, 322 F.3d 125, 129-30 (2d Cir. 2003)

15  (noting that it is one thing for a noise ordinance to be cast in general terms, but it is quite another

16  "for an injunction, which applies to a particular case, and violation of which is punishable by

17  contempt, to fail to provide reasonable specificity"). Without specifically identifying what SCEA

18  contends TRG should be enjoined from doing, "the desired equitable relief" is plainly not

19  described "in sufficient detail for [this Court] to determine whether . . . relief is potentially

20  appropriate and manageable." *See Castro*, 2012 WL 209187, at *3; *Brady*, 2012 WL 3583033, at

21  *8. Under circumstances like these, the Court need not, and should not, wait to act. SCEA's

22  injunctive relief request should be dismissed at the pleading stage. *See Castro*, 2012 WL 209187,

23  at *3; *Brady*, 2012 WL 3583033, at *8; *Mancha*, 2007 WL 4287766, at *3.

24      Third, SCEA's injunctive relief request should be dismissed because it exceeds the

25  breadth of the matters put at issue by the FAC. *See Castro*, 2012 WL 209187, at *3 ("an

26  injunction must be narrowly tailored to remedy the specific action necessitating the injunction").

27  The claims SCEA advances in the FAC all relate to the production and broadcast of the Game

28  On! commercial. SCEA's broadly-worded "obey the law" injunctive relief request clearly

1    extends far beyond that subject.  For that reason as well, the injunction claim should be dismissed

2    as to TRG (and as to Bridgestone).

3         **D.**     **SCEA's Claim For California Business & Professions Code Section 17200**

4                     **Should Be Dismissed As To TRG.**

5         The only remedies available for a violation of California Business & Professions Code

6    section 17200 are injunctive relief and restitution.  Bus. & Prof. Code § 17203; *Korea Supply Co.*

7    *v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1149 (2003) ("A [Section 17200] action is equitable

8    in nature; damages cannot be recovered . . . . '[p]revailing plaintiffs are generally limited to

9    injunctive relief and restitution.'" (internal citations omitted)).  For the reasons discussed in the

10   preceding section, the Court should dismiss SCEA's request for injunctive relief as to all claims,

11   including this one.  That would leave only restitution as a potential remedy for this claim.

12        SCEA makes no request for restitution, and that remedy would be legally untenable here

13   in any event.  SCEA makes no reference to restitution in the section of the FAC specifically

14   addressing its claims under the Business & Professions Code section 17200 claim.  In the Prayer

15   for Relief section, there is a general request for recovery of lost "profits and damages," but that is

16   specific to "Bridgestone's unlawful acts alleged" in the FAC.  There is no similar request as to

17   alleged acts by TRG.  Yet,  even if SCEA had made that same request as to TRG, the California

18   Supreme Court has limited restitution recoveries to "money or property that defendants took

19   directly from plaintiff" or "money or property in which [plaintiff] has a vested interest." *Korea*

20   *Supply Co.*, 29 Cal.4th at 1149.  Case law is clear that a party may not disguise a damages claim

21   as a claim for restitution. *Id.* at 1152.  SCEA has not alleged that TRG took any of SCEA's

22   "money or property," nor has SCEA alleged that TRG has "money or property in which [SCEA]

23   has a vested interest." *See Watson Laboratories, Inc. v. Rhone–Poulenc Rorer, Inc.*, 178

24   F.Supp.2d 1099, 1121-1122 (C.D. Cal. 2001) (it is <u>not</u> restitution where plaintiff seeks monetary

25   relief because "one competitor reaps a benefit at the expense of, but not from, another

26   competitor").   As the *Watson* court explained, "[t]here is a difference between 'getting' and

27   'getting back.'" *Id.* at 1122.

28

1   SCEA clearly has not alleged an entitlement to monetary relief that could conceivably be

2   considered restitution.  Since there is no available remedy to SCEA for its Business & Professions

3   Code section 17200 claim, the Court should dismiss that claim as well.

4   **IV.**   **<u>CONCLUSION</u>**

5   For all of the reasons discussed here, TRG respectfully requests that the Court dismiss

6   SCEA's second claim for relief (violation of California Business & Professions Code section

7   17200) and fifth claim for relief (tortious interference with contractual relations), and also dismiss

8   SCEA's request for injunctive relief as to all claims.

9

10   Dated: May 7, 2013                                         Respectfully submitted,

11                                                              CARLSMITH BALL LLP

12

13                                                    By: /s/ Justin M. Goldstein

14                                                         Justin M. Goldstein
                                                          Attorneys for Defendant
15                                                        THE RICHARDS GROUP, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

CARLSMITH BALL LLP
ATTORNEYS AT LAW
LOS ANGELES

4848-2580-7123.1                                    11

THE RICHARDS GROUP'S MOTION TO DISMISS - CASE NO. C12-04753 CRB